555 So.2d 21 (1989)
STATE of Louisiana
v.
Nick VINCELLI.
No. KA 88 1921.
Court of Appeals of Louisiana, First Circuit.
December 19, 1989.
*22 William R. Campbell, Jr., New Orleans, Attorney for the State.
Walter P. Reed, Dist. Atty., St. Tammany Parish and Roy K. Burns, Jr., Covington, for defendant.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Nick Vincelli was charged by bill of information with the possession of more than sixty pounds, but less than two thousand pounds, of marijuana, a violation of La.R.S. 40:966E(1). He pled guilty, reserving his right to appeal the denial of a pre-trial motion to suppress physical evidence. In accordance with the plea bargain, the trial court imposed a sentence of five years at hard labor. Defendant appealed, urging as his only assignment of error that the trial *23 court erred by denying his motion to suppress.
Defendant was arrested after marijuana was discovered in a suitcase in the trunk of the vehicle he was driving. At the hearing on the motion to suppress, Trooper Ron Whittaker of the Louisiana State Police testified that he stopped the car that defendant was driving after he observed the right tires of the vehicle wander onto the shoulder of the highway three times within one-quarter mile. Trooper Whittaker related that he intended to charge the driver with improper lane usage. However, defendant was unable to produce proof of his ownership of the vehicle, and the registration check revealed that the car was registered to someone else. Trooper Whittaker further learned during his check that both defendant and his companion, Maria Prudente, had criminal records involving the possession of marijuana, although both individuals stated that they had never been arrested. After briefly questioning defendant and Ms. Prudente and receiving conflicting information concerning the purpose, point of origin, and destination of their trip, Trooper Whittaker asked defendant for permission to search the car. Defendant readily agreed to the search and signed a written consent form authorizing it.
No contraband was found in the passenger compartment of the automobile. However, Trooper Whittaker found three locked suitcases in the trunk. Although both defendant and Ms. Prudente appeared to search for a key to the suitcases, neither was able to produce one. Trooper Whittaker then advised defendant that he intended to call for a dog trained to detect narcotics. Apparently referring to his inability to produce registration papers for the vehicle, defendant told the officer, "That's fine. I know it looks bad." He requested, however, that his companion be permitted to use the restroom. Escorted by the officer, defendant was permitted to drive his car to a rest area approximately two miles away; he and his companion were allowed to use the facilities.
Trooper Whittaker continued the search at the rest area. Before the dog arrived, he was able to pry open one of the suitcases, which was not fully locked, and he found therein a green garbage bag containing a substance he suspected was marijuana. Defendant and Ms. Prudente were arrested at that time. Shortly thereafter, the dog and his handler arrived. During an inspection of the car, the dog strongly alerted to the presence of contraband. Trooper Whittaker informed defendant that the officers intended to conduct a more intense search of the car because of the dog's reaction to it. Defendant then produced keys to the suitcases from his wallet. Approximately eighty-three pounds of marijuana were found in the suitcases.
Both defendant and Ms. Prudente were charged with the possession of more than sixty pounds of marijuana. Defendant was separately charged with improper lane usage. The state dismissed the charge against Ms. Prudente and the bill of information charging defendant with improper lane usage in exchange for defendant's plea.

DENIAL OF MOTION TO SUPPRESS
In his only assignment of error, defendant complains of the trial court's ruling denying his motion to suppress the marijuana. He claims that he was subjected to two separate detentions: the initial stop, and a second detention and search at the rest area. He claims the second detention actually constituted an illegal arrest because it was based only upon the trooper's "hunch," rather than probable cause; therefore, his consent was vitiated and the resulting search was illegal.
Initially, we note that defendant's claim that he was subjected to two separate detentions is without merit. At the hearing on defendant's motion to suppress, Trooper Whittaker specifically testified that the search was not concluded at the time he permitted defendant and his companion to go to the rest area, but that he accommodated them as a matter of courtesy. He further related that he was certain that defendant was aware the search was not *24 over. Trooper Whittaker had previously testified that he told defendant of his intention to call for a canine detector before the automobiles were moved. Accordingly, we find no merit to defendant's claim that this incident consisted of two separate searches; and, thus, we consider whether or not the investigatory stop gave rise to the probable cause to search defendant's automobile.
Although defendant contends that this situation is identical to the facts presented to this Court in State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987), we find defendant's comparison is unfounded. In Bunnell, this Court found the defendant's consent to search was tainted because the defendant was illegally detained. Therein, we noted that there were no facts known to the investigating officer which would have indicated that the defendant was engaged in illegal activity. Bunnell's car was stopped for speeding. The vehicle was properly registered to him in the state of New York, although both defendant and his companion had driving licenses issued in Florida. Although the information the investigating officer received from the accused and his companion may have been incomplete, it was not conflicting. The record reflects that the only facts known to the officer consisted of his awareness "of a lot of crimes that go on on the interstate," the apparent nervousness of defendant's companion, and the fact that the defendant carried a driving license from Florida, although he claimed that he lived in New York and the vehicle was registered to him in that state. 517 So.2d at 440-441.
Herein, although defendant claimed ownership of the vehicle, he could not produce evidence of ownership; and the registration was issued to another. Despite his claim that he had never been arrested, a records check indicated defendant had a criminal history involving the possession of controlled dangerous substances. Defendant and his companion gave conflicting information regarding the purpose, origin, and destination of their trip. Clearly, therefore, the investigating officer had more information available to him than did the officer who obtained the consent to search at issue in State v. Bunnell.
The distinction between an arrest and an investigatory stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed "reasonable suspicion" standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La. 1982). However, an investigatory stop is a complete restriction on liberty of movement for a time. A stopping for investigation is not a lesser intrusion because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Merchant, 490 So.2d 336 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986). It is the circumstances of each case which determine the nature of the detention. State v. Borning, All So.2d 134 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1330 (La.1986), cert. denied, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986).
Louisiana Code of Criminal Procedure article 215.1 authorizes a law enforcement officer to make an investigatory stop when he "reasonably suspects" that a person is committing, has committed, or is about to commit an offense. Although defendant claims that the scope of the initial investigatory stop was limited to the length of time necessary to issue a citation for improper lane usage, we find no merit to this assertion. Inherent in the officer's right to stop an individual and to demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688 (La.1981).
"The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no *25 further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances." 3 W. La-Fave, Search and Seizure § 9.2(f) (2d printing 1978), p. 38 quoting from State v. Watson, 165 Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1977, 40 L.Ed.2d 311 (1974).
In U.S. v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the Supreme Court recognized that an investigatory stop which continues indefinitely will at some point no longer be justified as an investigatory stop. However, according to Sharpe, as much as a "bright line" rule would be desirable in evaluating the reasonableness of an investigative detention, common sense and ordinary human experience must govern over rigid criteria. 105 S.Ct. at 1575. In reviewing the length of a detention, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. U.S. v. Sharpe, 105 S.Ct. at 1575; State v. Borning, 477 So.2d at 139; State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir. 1989).
We find, therefore, that the initial detention of defendant's car constituted a valid investigatory stop. Thereafter, the scope of the search was enlarged by Trooper Whittaker's ripening suspicion that defendant may have been involved in criminal activity.
Defendant further claims that his consent was invalid because he was not told of his right to refuse the search or to restrict its scope. However, the consent to search form signed by defendant, admitted into evidence as State Exhibit 1, contains the following language:
No promise, threat, or coercion of any kind has been made against me by the Louisiana Office of State Police and I have been informed by the above named State Police officer that I may refuse to consent to any search and that I may revoke my consent to search at any time. [Emphasis original.]
Officer Whittaker testified that he explained the form to defendant and defendant appeared to read the form before he signed it. The record contains no indication that defendant might not have been able to comprehend the contents of the form presented to him. Accordingly, we find that defendant was notified of his right to refuse consent or restrict the scope of the search by revoking his consent.
Therefore, we find that the initial detention of defendant was valid, and the consent to search obtained during the detention was untainted. We further find that the trial court did not err by denying defendant's motion to suppress the physical evidence seized as a result of that search.
CONVICTION AFFIRMED.